1 **WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America ex rel. Mary A. Cafasso,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>General Dynamics C4 Systems, Inc.,<br><br>　　　　　Defendant.<br>_____<br>General Dynamics C4 Systems, Inc.,<br><br>　　　　　Counterclaimant,<br><br>vs.<br><br>Mary A. Cafasso,<br><br>　　　　　Counterdefendant.<br>_____ | No. CV06-1381-PHX-NVW<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>**and**<br><br>**ORDER**<br><br>[Not for Publication] |

Before the Court is General Dynamics C4 Systems, Inc.'s ("GDC4S") Motion for Award of Attorneys' Fees [doc. # 363] and Motion for Leave to File Supplemental Bill of Costs re State Court [doc. # 385]. GDC4S brought suit against its former employee Mary Cafasso in state court alleging breach of contract and numerous other claims for her taking of tens of thousands of business records. Shortly thereafter, Cafasso brought suit in this Court seeking relief against GDC4S under the False Claims Act, 31 U.S.C. § 3730. Cafasso's complaint included two claims under the statute, first, a *qui tam* claim that GDC4S made false claims, and second, a retaliation claim that GDC4S had fired Cafasso in response to protected activities. The state court claims were voluntarily dismissed and

reasserted as counterclaims in the federal case. A stipulation of the parties provided that the state court orders would remain in effect unless modified by this Court and without waiver of any party's substantive rights. In effect, the dual litigation was replaced by single litigation in this Court. Judgment was entered in favor of GDC4S on the breach of contract action, the *qui tam* action, and the retaliation action, and permanent injunctive relief was entered on GDC4S's contract action requiring Cafasso to return GDC4S's business records.

GDC4S now moves for an award of attorneys' fees under Arizona contract law and the Court's statutory and inherent sanctioning powers. GDC4S requests $1,593,095.75 as sanctions against Cafasso and her lawyers: $91,930.50 for misuse of the federal action in state court; $1,143,004.25 for prosecution of the *qui tam* claim; and $358,161.00 for prosecution of the retaliation claim. GDC4S also moves for an award of attorneys' fees against Cafasso under A.R.S. § 12-341.01(A) in the total amount of $575,415.00, which includes $91,930.50 of the sanctions request. GDC4S also seeks to file a supplemental bill of costs relating to costs incurred in the state court action.

**FINDINGS OF FACT**

Previous orders have outlined the facts underlying the merits of this case, and it is unnecessary to retread that ground as a whole. [Doc. ## 219, 352.] GDC4S has prevailed in every aspect: It defeated Cafasso's *qui tam* claim by obtaining judgment on the pleadings, it defeated her retaliation claim at the summary judgment stage, and it won its state-law contract action against her on summary judgment as well. (GDC4S voluntarily dismissed several other counterclaims because success in the contract action provided the essential injunctive relief sought.)

**I.     The State Court Proceedings and the *Ex Parte* Federal Court Orders**

GDC4S brought suit against Cafasso in Maricopa County Superior Court on May 15, 2006. On May 24, 2006, the state court issued a temporary restraining order after notice to Cafasso requiring her to return nearly eleven gigabytes of documents she had

1 removed from the GDC4S offices without permission, while she was still on payroll but
2 after her work duties were ended and before her computer access was terminated.

3 Two days later, Cafasso filed this *qui tam* action in this Court. Her local Phoenix
4 counsel, Thomas M. Rogers, telephoned and asked to come to chambers to present papers
5 that he had filed in a sealed action. His inquiry did not request a hearing or indicate that
6 *ex parte* relief would be requested. The undersigned judge allowed him to come to
7 chambers. After exchange of pleasantries, Mr. Rogers presented and requested entry of
8 two *ex parte* orders, one sealing the case and one permitting Cafasso to inform the state
9 court *ex parte* of the pendency of the federal action.

10 At that point, this Court committed an error of judgment in not recognizing the
11 unannounced request for the second *ex parte* order as requiring presentation on the
12 record. Mr. Rogers and the undersigned judge have differing recollections of the
13 conversation that ensued. The Complaint itself referenced the state court litigation and
14 restraining order as concerning an attempt to get Cafasso's computer, not documents of
15 GDC4S that Cafasso allegedly misappropriated. The undersigned judge recalls inquiring
16 about the referenced state court litigation and receiving a general response but no
17 disclosure of an existing state court order to return misappropriated documents. Nor was
18 there any disclosure of an intent to use this Court's *ex parte* order allowing *ex parte*
19 disclosure of this proceeding to the state court as a basis to seek lifting of a state court
20 order without notice to GDC4S. Mr. Rogers now states that he and unlisted co-counsel,
21 Richard J. Harris and Michael Bothwell of Atlanta, Georgia, planned and rehearsed a full
22 presentation of the relevant facts and procedural history of the state court proceeding if
23 this Court were to inquire about it. Mr. Rogers remembers informing this Court of the
24 state court temporary restraining order. This Court entered both requested *ex parte*
25 orders.

26 Nearly four weeks later, armed with this Court's order allowing Cafasso to inform
27 the state court *ex parte* of the federal action and with the participation of an Assistant
28 United States Attorney, Mr. Rogers presented an *ex parte* request to the state court to lift

the May 24, 2006 temporary restraining order requiring Cafasso to return the nearly eleven gigabytes of documents taken from GDC4S. The motion was heard by a judge *pro tempore* in the absence of the assigned Superior Court Judge. Compliance with the temporary restraining order would not have prejudiced the United States' investigation if there were some underlying False Claims Act claim; indeed, the United States could get all GDC4S's documents directly without divulging the sealed action under 31 U.S.C. § 3733. The judge *pro tem* was persuaded to lift the restraining order by the unsupported contention that the investigation itself, not just the filing of the federal action, must be kept secret under federal law. The judge *pro tem* explicitly stated his belief that he was lifting the restraining order because it was required by federal law and at the request of this Court. Mr. Rogers denies that he made either assertion to the judge *pro tem*, but the record shows that he did not disabuse the judge of those mistakes when the judge expressed them, even after the judge asked counsel to correct him as appropriate. Indeed, counsel built on those mistakes and persuaded the judge *pro tem* to stay the entire state court proceeding. The Arizona Court of Appeals later granted special action relief against these orders as unauthorized by law.

The False Claims Act required Cafasso to give the Government "substantially all material evidence and information [she] possesse[d]." 31 U.S.C. § 3730(b)(2). She was not required to show the Government evidence that she did not possess, or to possess evidence unlawfully. Cafasso did not show a lawful basis for removing or retaining those documents. In addition, the False Claims Act only protects the confidentiality of the federal court proceedings themselves. It does not directly enable or require courts to protect the secrecy of the Government's or a relator's investigation at the price of violating other substantive and procedural laws.

Upon later learning of these events, this Court vacated its *ex parte* orders as improvidently entered. [Doc. # 19.]

## II. The Federal Complaint

Cafasso's initial complaint was six pages long. [Doc. # 1.] It accused GDC4S of making false claims, but it identified none of the specific false claims or intellectual property at issue. The Complaint contained only conclusory assertions of liability. Six months later, Cafasso filed a lengthier Amended Complaint which was stricken for invading Defendant's attorney–client privilege. [Doc. # 87.] A modified version of the Amended Complaint was filed in August 2007 without immediate challenge. [Doc. # 92.][1] This complaint included more bulk but identified no specific false claims. Weeks and months after filing the initial complaint, Cafasso herself stated in state court filings that she needed to retain the documents so that her lawyers could perform their Rule 11 inquiry and determine whether she had viable claims against GDC4S.

## III. *Qui Tam* Discovery and Briefing

Discovery proceeded in this forum. At a September 28, 2007 Scheduling Conference, GDC4S expressed frustration with Cafasso's tactics. In particular, GDC4S objected to Cafasso's demand that GDC4S identify privileged documents in Cafasso's possession before she identify those that supported her claim. Such a process would have placed an enormous and unnecessary burden on GDC4S because Cafasso had taken nearly eleven gigabytes of documents, numbering in the thousands. The Court ordered that GDC4S was "entitled to be given usable, practical disclosure whether under Rule 26(a) or under a crafted order from the Court as to what it is you are relying on for your case against them." [Doc. # 104 at 16.] It was not enough to say that all eleven gigabytes of documents were relevant to Cafasso's claims; Cafasso was still obligated to inform GDC4S of those documents supporting her claims.

In November 2007, Cafasso gave "categorical discovery responses listing many thousands of documents as the supposed bases for each claim—exactly the kind of

---

[1] During this time, proceedings were stayed for several months while the Government considered whether to intervene. [Doc. # 42.]

evasion and attempt to shift her own work to the opposing party that the court warned in September 2007 was improper." [Doc. # 219 at 14.] A discovery dispute then arose regarding the scope and time limits of discovery, and the dispute was adjudicated in January 2008. At the discovery dispute hearing, the Court reiterated its earlier directions concerning the burden of discovery and granted Cafasso's counsel additional time to comply. GDC4S's Rule 37 motion for attorney's fees relating to this dispute was denied. After the hearing, Cafasso propounded discovery into 110 inventions that were not mentioned in the Substitute Amended Complaint. The Court granted GDC4S's motion for a protective order against the new lines of inquiry. No sanctions were sought or awarded at this stage.

Cafasso's evasiveness continued on June 2, 2008, when she responded to an interrogatory asking her to "[i]dentify each specific provision of 31 U.S.C. § 3729(a)(1)-(7) of the False Claims Act ("FCA") that you allege in paragraph 173 of the Substitute Amended Complaint ("SAC") that Defendant 'knowingly violated' . . . ." [Doc. # 184-2, exh. 2, at 2-4.] In response, Cafasso stated that she "has not made a claim as described in this Interrogatory, nor does the law require that she claim such to have been the case." By any fair reading, Cafasso's statement abandoned any *qui tam* allegations.[2] The answer prompted GDC4S's motion for judgment on the pleadings as to the *qui tam* action.

---

[2] In her briefing on the motion for judgment on the pleadings, Cafasso's attorneys argued that she could state a claim under the False Claims Act without pleading that a "claim" was submitted to the Government. Whatever the merits of that theory under the law applicable at the time, it in no way justified her refusal of discovery. The interrogatory sought the basis for claims under the statute, not "claims" submitted to the Government, as Cafasso now reconceives it.
 In her briefing on this motion for attorney fees, Cafasso more candidly states that by refusing this discovery on the eve of her deposition of GDC4S, she thought she could invoke GDC4S's duty to confer before seeking discovery relief, postponing her production until after the deposition. [Doc. # 392 at 5-6.] Rather than demand a better answer, GDC4S took her answer at face value, as it was entitled to do.

Responding to this motion, Cafasso lodged a response that was 57 pages long, exceeding the page limit by 40 pages. The exhibits to the response also included 775 pages of single-spaced argument and supplemental charts. The Court disallowed the filing. On its own, the Court granted Cafasso a two-week extension to file a proper response and warned that her approach was improper. [Doc. # 202.] Nonetheless, Cafasso filed a 17-page response that included 549 single-spaced pages of mostly supplemental charts. She also lodged a 733-page Proposed Second Amended Complaint.

GDC4S's motion for judgment on the pleadings was granted [doc. # 219], and leave to amend again was denied. The substitute amended complaint of record appeared to allege that GDC4S had breached certain contractual or regulatory obligations to the Government, but it did not allege any "presentment of [a] false claim itself, or the submission of a false statement or omission to get a false claim paid" on the part of GDC4S. [*Id.*] Vague attacks on regular billing under GDC4S's contract did not avail Cafasso. The contract covered many technologies not at issue, and the Complaint did not explain how any such billing was relevant to charges of fraud or falsification. Similarly, nothing in the complaint supported other allegations of nondisclosure on GDC4S's part. Denying further leave to amend, the Court noted that the proposed substitute amended complaint violated this Court's order to "comply with the rules of pleading." [*Id.* at 2; doc. # 208 at 2.] It also violated the protective order already entered by attempting to expand the scope of the case beyond the thirty-seven previously identified inventions. [Doc. # 172.]

Subsequently, both parties moved for summary judgment on the remaining claims: Cafasso's retaliation claim against GDC4S, and GDC4S's counterclaims against Cafasso. GDC4S prevailed on both motions. [Doc. # 352.] Facts revealed during discovery showed Cafasso's retaliation claim to be without merit. She could offer no valid defense to the contract action.

**CONCLUSIONS OF LAW**

GDC4S divides its fee request into three primary areas: the breach of contract claim (counterclaim in this federal action and principal claim in the state court proceedings), the retaliation claim, and the *qui tam* action. For reasons explained below, partial fees will be awarded against Cafasso on the contract claim for taking GDC4S documents.

**I.      The Breach of Contract Claim**

GDC4S will be awarded partial fees for its state court litigation and federal counterclaims under A.R.S. § 12-341.01(A). A stipulation of the parties preserves the state court rights of the parties in this forum that fairly includes the general right to seek attorneys' fees at the conclusion of the case as a matter of Arizona contract law. [Doc. # 75.] For choice of law purposes, Arizona's fee shifting statute forms part of the substantive contract rights of the parties. *See In re Larry's Apartment, L.L.C.,* 249 F.3d 832, 836 (9th Cir. 2001); *Building Innovation Indus., LLC v. Onken*, 473 F. Supp. 2d 978, 986 (D. Ariz. 2007).

A.R.S. § 12-341.01(A) provides, "In any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." To determine whether to award fees, the Court considers the factors governing awards under the statute, including the merits of Cafasso's defense, GDC4S's success in obtaining the relief sought, the avoidable expense incurred, the possibility that the award will cause "extreme hardship," any chilling effect the award might have on other parties with tenable claims or defenses, and the novelty of the legal questions presented. *See Associated Indem. Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1995).

**A.      The Merits of Cafasso's Defense**

Cafasso's defense to the contract claim had no merit. Cafasso never disputed she took GDC4S's confidential and proprietary business documents in violation of the plain terms of her employment contract with GDC4S. She raised only the defense that she was privileged to take those documents to obtain evidence for her *qui tam* action. It is not

necessary to adjudicate here whether such a privilege ever exists in any circumstances. Cafasso had no such privilege in this case. In removing the documents, she was not cooperating in a Government investigation, nor was she reporting fraud, nor was she preserving evidence. Moreover, Cafasso's contact with Army Fraud Advisor Spitza in April 2006 does not excuse her conduct. Spitza asked to see any documentation of fraud that Cafasso possessed. He did not require or ask Cafasso to download or otherwise obtain GDC4S's technology information wholesale.

This is not a case where an employee came into the possession of specific documents that exposed wrongdoing at her company. Cafasso obtained these documents indiscriminately, whether or not they pertained to the specific claims she sought to bring. So doing, she deprived GDC4S of vital business benefits provided by its employment agreement. That agreement was designed to prevent GDC4S's proprietary information from falling into the wrong hands. It prevented the competition from availing itself of GDC4S's investment in its own technology. It also protected the secrecy of new technologies that play a part in the nation's military and domestic security operations. Cafasso wilfully compromised these interests for no legitimate litigation purpose, only the speculative pursuit of self-help discovery.

**B.     GDC4S's Success in Obtaining Relief**

Summary judgment was entered in favor of GDC4S on the breach of contract counterclaim. The other counterclaims relating to the same set of facts were voluntarily dismissed, as GDC4S obtained the full injunctive relief it sought. [Doc. ## 352, 377.] On its counterclaims, GDC4S prevailed in every meaningful way.

**C.     Avoidable Expense**

Cafasso's weak defense of the state court claims and federal counterclaims caused much expense that could have been avoided. On June 21, 2006, almost a month after filing her federal complaint, she argued that she needed to retain the documents at issue "for her legal counsel to perform their due diligence obligations pursuant to Rule 11, Ariz. R. Civ. P., to determine whether she has provable claims against [GDC4C]." [Doc.

# 227, tab 2:1.] She reiterated this statement as late as August of that year. [*Id.* at tab 1:10.] Contrary to her assertions to the state courts in 2006, Cafasso now contends that she had sufficient Rule 11 basis for her False Claims Act claims even without review of the documents and based on what she heard and believed while at GDC4S. For purposes of this motion, the Court will take Cafasso's new contention as correct. Even so, the taking and retention of the documents in violation of contract served no legitimate purpose.

The Government had access to all GDC4S's documents, even without legal process. It could have sought those documents directly without informing GDC4S of the pendency of Cafasso's False Claims Act claims, thus observing the letter of the sealing terms of the Act. *See* 31 U.S.C. § 3733. Once the Government elected not to intervene, Cafasso could have served the complaint and had discovery. There was no colorable basis to think GDC4S was destroying documents, nor was it even suggested that documents were altered or falsified in the first place. If there were any basis to fear loss of documents, Cafasso could have applied to this Court for appropriate relief, including early protective orders.

In short, every principle of substantive and procedural law cut against Cafasso's self-help discovery tactic. Moreover, there was no legitimate reason for refusing compliance with the state court restraining order to surrender documents to GDC4S. Shortly after getting that order lifted *ex parte*, Cafasso herself breached the seal on the pendency of her False Claims Act action and GDC4S found out about it. She could have gotten any appropriate discovery with judicial enforcement of the rules designed to protect both parties.

Cafasso now contends that she should not be assessed attorney fees on this failing battle that never had any legitimate practical purpose precisely because she would have "settled" this part of the case if she had been asked. But she was asked—in a lawsuit, which she fought with dogged determination to the end. This contention does not defend her conduct; it confesses its lack of justification.

To be sure, Cafasso's misappropriation of records and persistent battle to retain them had advantages to her, but not legitimate ones. It freed her of the inconvenience of doing discovery through the ordained process, and it deprived GDC4S of the protections of judicial mediation over what evidence and documents must be produced. It exposed GDC4S to the danger from having its sensitive documents beyond its physical control, at risk of further compromise from lack of care or misconduct by Cafasso herself or her attorneys. GDC4S had reason to fear for Cafasso's integrity and no obligation to trust that of her attorneys, whom they did not know. GDC4S was exposed to the security limitations of her attorneys' law offices, which surely were different from the security systems GDC4S designed for its business and technology data. These circumstances put GDC4S at the utmost duty to reclaim its documents. This exponential increase in GDC4S's cost and risk of this litigation gave Cafasso a leverage not grounded in the merits of any claim.

### D. Possibility of Extreme Hardship

Cafasso's sworn statement indicates that she has remained unemployed for over three years while devoting over 5,000 hours to this litigation, her house has limited equity remaining, and her living expenses are barely being met while her savings are "nearly depleted." Cafasso claims to have lost $500,000 in income over a period of three years, which suggests substantial past income and present earning power. She provides no specific information concerning her assets or sources of income, her household budget, or additional liabilities, but GDC4S does not dispute her general assertions of likely hardship. This limited evidence indicates the possibility that a fee award of $575,415.00 would cause Cafasso extreme hardship.

In a typical commercial litigation case, it may be appropriate to give greater weight to that fact. Where a whistle blower, consumer, or other individual pursues a contract action against a large company in good faith and with substantial basis throughout, the relative resources of the parties may often weigh against a fee award to the large company. But this is not the ordinary commercial case. Here the breach of a generally

valid contract was plain and wilful, and great substantive harm and litigation cost was thrust upon the employer. The justification offered for the breach of contract, if it might suffice in narrow circumstances, fell far short of the wholesale misappropriation of records in this case. The unfair expense of having to defeat Cafasso's breach of contract is not excused by its own magnitude. It would be a poor exercise of discretion to allow that reckless, unnecessary, and burdensome breach to trump the other factors strongly favoring an award of fees "to mitigate the burden of the expense of litigation to establish a just claim." A.R.S. § 12-341.01(B).

Therefore, although fees will be awarded under A.R.S. § 12-341.01(A), the amount of the award will reflect a reduction based on the possibility of extreme hardship the full amount requested could impose on Cafasso.

### E. Chilling Effects

Cafasso contends that a fee award will deter parties from raising novel defenses and will deter future *qui tam* plaintiffs from bringing suit. These arguments rely upon flawed reasoning. As explained in the following section, Cafasso's defense was not so much novel as unsupported. Breaching the terms of her employment agreement was not necessary to bring the *qui tam* or retaliation actions. The contract fees at stake are not attributable to GDC4S's successful defense of the *qui tam* and retaliation actions, but rather to the prosecution of a well-founded contract claim independent of those actions. *Cf. Moses v. Phelps Dodge Corp.*, 826 F. Supp. 1234, 1237 (D. Ariz. 1993) (disfavoring fee awards relating to the defense of statutory actions that vindicate Congressional intent). Cafasso's claims under the False Claims Act and GDC4S's breach of contract claims and counterclaims do not have a reciprocal relationship. The award poses no threat to False Claims Act plaintiffs who perform a reasonable inquiry into the facts and law underlying their claim and avail themselves of the discovery under the law.

### F. Novelty of the Issues

Any novelty to Cafasso's defense and her related *qui tam* theory does not militate against fees. Cafasso's defense to her breach of contract was not grounded in the line of

authority protecting whistle blowers who lawfully report fraud or cooperate in ongoing Government investigations. [Doc. # 352 at 22.] The lack of directly applicable precedent for her sweeping proposition signals her defense's weakness more than its novelty. *In re Estate of Parker*, 217 Ariz. 563, 569, 177 P.3d 305, 311 (Ct. App. 2008) (absence of applicable precedent does not preclude award of fees where "the result was compelled by the plain language of the statute").

### G. Interwoven Counterclaims

The award of fees encompasses the other counterclaims for misappropriation of trade secrets, breach of fiduciary duty, common law fraud, conversion, and computer fraud and abuse. Although the bulk of the fees are attributable to the contract claim, the other counterclaims are sufficiently interwoven with the contract claim to fall within the ambit of the award. *Campbell v. Westdahl*, 148 Ariz. 432, 441, 751 P.2d 288, 297 (Ct. App. 1985). They arise out of the same set of facts—Cafasso's removal of nearly eleven gigabytes of documents from GDC4S's offices—and they all involve a common legal question: whether Cafasso's contractual relationship with GDC4S, including her contractual duty of secrecy, prohibited her from removing the documents. *Modular Mining Sys., Inc. v. Jigsaw Techs., Inc.*, No. 2 CA-CV-2008-0118, 2009 WL 1162893, at *6 (Ariz. App., April 30, 2009); *see also, e.g.*, A.R.S. § 44-401(1)-(2) (defining misappropriation of trade secrets with reference to duties of secrecy); *Restatement (Second) of Agency* § 395, 396 cmt. h (1959) (defining fiduciary duty with reference to confidentiality agreements). However, the Court's discretionary reduction in the fee award effectively limits the award to an amount incurred directly on the breach of contract claim.

Cafasso's contract with GDC4S was not an implied agreement or one that merely mirrored her preexisting legal obligations, but a "special contractual relationship" that created specific boundaries in Cafasso's employment relationship. Thus, the counterclaims would not have arisen in the same manner had the contract not existed.

- 13 -

*Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 523-24, 747 P.2d 1218, 1222-23 (1987).

### H.	Fee Statements

The Court has reviewed the fee statements submitted by GDC4S. There is no merit to Cafasso's contention that the statements contain many billing entries that cannot be the subject of any fee award, either because the billing entries are too vague or because GDC4S has sometimes engaged in "block billing" of unrelated tasks. The context of the objected-to entries makes their meaning clear, and tasks are grouped into appropriate categories of activity.

### I.	Amount of Fees and the Fee Litigation

Under A.R.S. § 12-341.01(A), the Court has discretion to determine the amount of attorneys' fees to be awarded. The award of attorneys' fees "need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid." A.R.S. § 12-341.01(B).

The following factors strongly weigh in favor of an award of attorneys' fees: the merits of Cafasso's defense, the avoidable expense incurred, the novelty of the legal questions presented, and any chilling effect the award might have on other parties with tenable claims or defenses. The possibility that an award in the amount of $575,415.00 will cause extreme hardship on Cafasso weighs against an award of that amount, but is barely supported with Cafasso's general assertions and no specific information regarding her financial condition.

Therefore, attorneys' fees will be awarded under A.R.S. § 12-341.01(A) in the amount of $300,000.00. In exercising its discretion in setting the amount of the award, the Court also exercises its discretion to decline to impose an additional award of attorneys' fees incurred in preparing the fee application. This is a major discretionary reduction in the award that otherwise would be warranted.

### J. Sanctions as an Alternative Basis for Fees Related to the Contract Claim

No fee award will be made on the alternative basis of sanctions against Cafasso's attorneys under 28 U.S.C. § 1927 or against Cafasso or her attorneys as a matter of inherent powers. At the outset, fees cannot be assessed based on Mr. Rogers' *ex parte* obtaining of the May 26, 2006 order allowing him to inform the state court *ex parte* of this proceeding. This Court's error in judgment in hearing Mr. Rogers' request off the record deprives him of the proof of whether he did or did not discharge his ethical duty to inform the Court of all material facts and circumstances in the *ex parte* proceeding, even though he is also at fault for not informing the Court of his purpose to ask for *ex parte* orders when he asked to come to chambers. Rules of the Supreme Court of Arizona, Rule 42, ER 3.3 (d) ("In an ex parte proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer which will enable the tribunal to make an informed decision, whether or not the facts are adverse.") The Court's error is greater, and sometimes judicial error has irremediable consequences.

More generally, sanctions relating to the state proceedings are beyond this Court's power. Neither § 1927 nor inherent judicial powers enable this tribunal to remedy any such abuses; these powers are limited "to attorney's actions which multiply the proceedings in the case before the court." *In re Case*, 937 F.2d 1014, 1022-24 (5th Cir. 1991); *accord GriD Sys. Corp. v. John Fluke Mfg. Co., Inc.*, 41 F.3d 1318, 1319 (9th Cir. 1994) (following the holding of *Case*). Obviously a court may sanction abuses of process beyond the courtroom, but only to the extent those abuses implicate the court's administration of its own rules or orders. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 55 & n.17, 57-58 (1991); *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 989 F.2d 791, 794 (5th Cir. 1993); *see also LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 904-05 (D.C. Cir. 1998). This is not a case where the state proceedings interfered in this way. None of GDC4S's cited cases affirms, condones, or even discusses the use of a federal fee sanction to redress abusive litigation conduct in non-federal proceedings. *See, e.g.*, *In re*

*DeVille*, 361 F.3d 539, 545-46, 550-51 (9th Cir. 2004); *Fink v. Gomez*, 239 F.3d 989, 993-94 (9th Cir. 2001); *Bader v. Itel Corp.* (*In re Itel Sec. Litig.*), 791 F.2d 672 (9th Cir. 1986); *Schepers v. Babson-Smith*, 2008 WL 246086, at *5-7 (N.D. Iowa Jan. 28, 2008).[3]

GDC4S contends that the parties' procedural stipulation enables this Court to sanction conduct that occurred in the state proceedings. This is not so. The scope of the Court's sanctioning powers is akin to subject matter jurisdiction, *Morris ex rel. Rector v. Peterson*, 871 F.2d 948 (10th Cir. 1989), and like subject matter jurisdiction, it cannot be enlarged by consent or waiver of the parties. The purpose and effect of the stipulation was to achieve judicial economy by combining two related proceedings. It accelerated the federal case according to what had been accomplished in the state court, and the parties brought with them whatever substantive rights they could still assert in this tribunal. Those rights included the fee-shifting provisions of Arizona contract law, which are an incident of substantive contract rights. *Building Innovation Indus., LLC v. Onken*, 473 F. Supp. 2d 978, 986 (D. Ariz. 2007). They did not include a procedural right, which never existed, to have a federal district judge regulate abusive litigation conduct that occurred in the state forum. Even where separate state court proceedings are used to obstruct a federal action, the federal court's sanctioning powers do not stretch so far. *See Case*, 937 F.2d at 1022 (reversing bankruptcy court's award of § 1927 and inherent powers sanctions for state court tactics designed to harass federal court creditor and delay federal proceedings).

For the same reasons, no attorney sanctions will be awarded for Cafasso's alleged evasion of service of process. Even if the Court had the power to award those sanctions, the record contains no indication that Cafasso's attorneys participated in or encouraged

---

[3] The state and the federal actions in this case are separate. The state action was voluntarily dismissed, and the parties stipulated to the adoption of the state court's orders by this Court, while reserving all the rights they retained in the state proceeding. A non-removed state court proceeding is an "entirely separate action" even when a parallel claim is made in federal court. *Case*, 937 F.2d at 1023.

- 16 -

evasive conduct on her part. Any difficulty in obtaining personal service on Cafasso herself is primarily explained by her need to travel out of state from May 24, 2006, until June 18, 2006, to attend to her ill mother. She was served five days after she returned.

**II.     The Retaliation Claim**

No fees will be awarded as sanctions relating to Cafasso's retaliation claim. The Court is not persuaded that Cafasso's attorneys unreasonably multiplied the retaliation proceedings in violation of 28 U.S.C. § 1927, or that Cafasso committed some serious wrongdoing that requires use of the Court's inherent sanctioning power because the statutes or rules come up short. *Chambers*, 501 U.S. at 50. Summary judgment on the retaliation claim was granted in favor of GDC4S. The retaliation claim's lack of merit is not, by itself, grounds for § 1927 sanctions. *Knorr Brake Co. v. Harbil, Inc.*, 738 F.2d 223, 226 (7th Cir. 1984).

GDC4S argues that Cafasso's retaliation suit was not brought in good faith because in the days before leaving the company, she complained that her termination was in retaliation for reporting an instance of workplace violence. This complaint is not inconsistent with the allegations relating to retaliation. As the False Claims Act itself recognizes in its sealing provisions, plaintiffs may have good reasons not to alert their employers of an intent to bring suit under the Act. Nor does the time passing between her ethics complaints and her termination show bad faith in pursing the claim; it simply increases the difficulty of showing a causal connection between the two.

**III.    The *Qui Tam* Action**[4]

---

[4] GDC4S originally sought fees relating to the *qui tam* claim under the False Claims Act itself, 31 U.S.C. § 3730(d)(4). [Doc. # 227 at 16.] Although GDC4S's most recent motion for attorney's fees renewed the original motion with that request for relief, the new motion excludes the False Claims Act as a basis for fees. Therefore, no fee request will be adjudicated under the Act. However, § 3730(d)(4) does not preclude sanctions by way of the Court's inherent powers or 28 U.S.C. § 1927. *Pfingston v. Ronan Eng'g*, 284 F.3d 999, 1006 n.5 (9th Cir. 2002).

- 17 -

Finally, no fees will be awarded as sanction against Cafasso's attorneys under 28 U.S.C. § 1927 for multiplication of the *qui tam* proceedings. In general, § 1927 is not a vehicle for awarding "a generic, all-encompassing, massive, post-trial retribution, with no indication whatsoever of reasonableness." *In re Yagman*, 796 F.2d 1165, 1185 (9th Cir. 1986). Yet that is the type of award GDC4S seeks: all the attorney fees that it expended to litigate the *qui tam* action. Other, more specific principles support this denial of sanctions. First, the filing of a complaint cannot be the basis for sanctions under 28 U.S.C. § 1927. *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 435 (9th Cir. 1996). To predicate a fee award on the pursuit of the *qui tam* action as a whole would contravene this basic principle.

Second, it is necessary to deny fees because some such fees were already sought and denied before judgment, and others were not sought at all. In general, district courts are expected to sanction wrongful conduct as it occurs. *Yagman*, 796 F.2d at 1183. The Court will not revisit its previous denials of fees relating to purported discovery abuses. Although post-judgment sanctions may be warranted where the depth and the cumulative effect of the bad faith were not clear to the Court at the time of the offending conduct, *see Yagman*, 796 F.2d at 1183; *Salstrom v. Citicorp Credit Servs., Inc.*, 74 F.3d 183, 185 (9th Cir. 1996), the Court does not come to a different conclusion.[5]

Third, GDC4S contends that the Court already has characterized certain acts of Cafasso's attorneys as taken in bad faith, namely, the filing of egregiously over-length papers and attempted expansion of discovery that contravened both the rules and prior orders of the Court. However, these characterizations were not made with reference to sanctioning standards, but with reference to the standards of briefing, discovery, and amendment of pleadings. The Court limited discovery and rejected the proposed over-length filings. The nature of counsel's bad faith at that time went to the merits of those

---

[5] The Court declined to entertain a motion for sanctions at the time the *qui tam* action was adjudicated to avoid likely duplication of effort. [Doc. # 237.] The Court treats the instant motion as though it had been brought at that time.

- 18 -

tactics—that is, whether expanded discovery or amendment should be allowed—and not to the vexatious or multiplicitous abuse of the litigation process. To the extent that Cafasso's counsel persisted in an ill-considered strategy near the conclusion of the *qui tam* action, that strategy engendered its own penalty: denial of leave to amend the insufficient complaint again. The Court's prior findings of bad faith do not, therefore, require the imposition of sanctions now.

Fourth, GDC4S's fee motion fails because it does not set apart the additional expenses attributable to specific instances of wrongful behavior. *Yagman*, 796 F.2d at 1183. It is not enough to say that a particular stage of the briefing was time consuming. The burden is on GDC4S to show the extent to which any sanctionable actions augmented its expense beyond what it should have been required to spend in the course of good faith litigation. *New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1306 (9th Cir. 1989). The fee motion and exhibits submitted with it present no such differentiation.

Other conduct relating to the *qui tam* case will not be the subject of sanctions, including Cafasso's June 2, 2008 response to the interrogatory and her counsel's appearance by telephone for settlement meetings. Cafasso's response to the interrogatory confirmed her attorneys' defiant attitude toward discovery duties, but it did not multiply the proceedings. To the contrary, it hastened their conclusion. GDC4S held Cafasso to her answer, rather than demanding a different answer, and obtained judgment on the pleadings just weeks later.

**IV. State Court Costs**

GDC4S seeks leave to file a supplemental bill of costs relating to taxable costs incurred in the state court action. [Doc. ## 385, 386.] Under LR 54.1(e)(9), a prevailing party may be entitled to costs of "fees paid to the Clerk of the State Court prior to removal." LR 54.1(e)(10) provides for taxation of "[o]ther items . . . with prior Court approval." GDC4S's state court action was not removed. Rather, the parties stipulated to its dismissal in state court and it was refiled in federal court with a further stipulation that all prior rulings of that court would be adopted by this one. Nonetheless, taxation of state

1  court costs in this instance falls within the spirit of LR 54.1(e)(1)-(9) and within the letter
2  of LR 54.1(e)(10). To deny taxable costs from the state court proceeding would defeat
3  the purpose of the stipulation bringing the state court claims into this case without
4  prejudice to the rights of either party. GDC4S will therefore be granted leave to file its
5  supplemental bill of costs. Cafasso may raise objections to particular costs once the bill is
6  filed.

**ORDER**

IT IS THEREFORE ORDERED that Defendant GDC4S's Motion for Award of Attorneys' Fees [Doc. # 363] is granted in part and denied in part. The motion for award of fees against Relator's counsel under 28 U.S.C. § 1927 and the court's inherent power is denied. The motion for award of fees against Relator Mary A. Cafasso under A.R.S. § 12-341-01(A) is granted in the amount of $300,000.00.

IT IS FURTHER ORDERED that Defendant GDC4S's Motion for Leave to File a Supplemental Bill of Costs re State Court [doc. # 385] is granted. The Clerk is directed to file Defendant GDC4S's Lodged [Proposed] Supplemental Bill of Costs [doc. # 386].

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of General Dynamics C4 Systems, Inc., against Mary A. Cafasso in the amount of $300,000.00 for attorney fees pursuant to A.R.S.§ 12-341.01(A).

DATED this 3rd day of November, 2009.

_____
Neil V. Wake
United States District Judge